# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

LAURA CHRISTINE RICHEY,⁣ )
⁣ )
⁣ Plaintiff,⁣ )
⁣ )
vs.⁣ )⁣ No. 07-6008-CV-SJ-FJG
⁣ )
JIM HAWK TRUCK TRAILER, INC.,⁣ )
⁣ )
⁣ Defendant.⁣ )

## ORDER

Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 25).

## I.    BACKGROUND[1]

This is an employment discrimination action.   Plaintiff, Laura Richey, is a 48-year-old female who worked for Jim Hawk Truck Trailers of Kansas City, Inc. from May 2001 to October 10, 2005.  Plaintiff worked in the service and parts department.  On October 11, 2005, Jim Hawk Truck Trailers of Kansas City terminated plaintiff by letter for excessive absenteeism.  Plaintiff brought a Four-Count Petition in the Circuit Court of Clinton County, Missouri on November 22, 2006 against defendant Jim Hawk Truck Trailer, Inc.  Defendant then removed this action to federal court on January 16, 2007 based upon diversity jurisdiction.  Plaintiff alleges the following claims against defendant Jim Hawk Truck Trailer,

---

[1]In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."  See Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996).  Accordingly, all facts set forth in the Court's statement of facts will be taken from defendant's motion for summary judgment (Doc. No. 25) and defendant's suggestions in support (Doc. No. 26) unless otherwise specified.

Inc.: (1) Count I alleges an age discrimination claim; (2) Count II alleges a hostile environment claim; (3) Count III alleges a gender discrimination claim; and (4) Count IV alleges a retaliation claim.

Defendant Jim Hawk Truck Trailer, Inc. is an Iowa Corporation with its principal place of business in Council Bluffs, Iowa. Defendant is a wholly owned subsidiary of Jim Hawk Group, Inc. in which Jim Hawk is the majority shareholder. Jim Hawk Truck Trailers of Kansas City is a Missouri Corporation located in Kansas City, Missouri, but is not a party to this action. However, plaintiff did not work for defendant Jim Hawk Truck Trailer, Inc. Plaintiff worked at Jim Hawk Truck Trailers of Kansas City from May 2001 to October 2005. Jim Hawk Truck Trailers of Kansas City is also a wholly owned subsidiary of Jim Hawk Group, Inc. Both companies sell parts for tractor trailers and perform service work on tractor trailers.

Nancy Bottero ("Bottero"), Jim Hawk Truck Trailers of Kansas City's office manager, interviewed plaintiff and participated in the decision to hire her. Bottero is 61-years-old. Jim Knotek ("Knotek"), Jim Hawk Truck Trailers of Kansas City's General Manager, also approved the hiring decision. Plaintiff was hired to perform work in both the accounts payable and parts departments and was responsible for billing and making payments to vendors. In March 2005, plaintiff's job responsibilities changed so that she only worked in the service department. Plaintiff had the sole responsibility for answering the phones, writing service tickets for work requested by customers, posting the mechanics' time in the computer so that it could be billed, and collecting CODs.

On June 20, 2000, Jim Hawk Truck Trailers of Kansas City implemented a written policy requiring all employees to utilize time clocks. Those policies were reiterated in

2

written memoranda dated November 8, 2002 and September 8, 2003.

Steve Miller ("Miller") supervised plaintiff until May 2005 and then Bruce Sider ("Sider") supervised plaintiff until her termination. Both supervisors were employed by Jim Hawk Truck Trailers of Kansas City. Plaintiff was allotted ten days of vacation per year, but did not receive any sick days. In 2004, plaintiff missed thirteen days of work. From January 2005 to August 2005, plaintiff missed fifteen days of work, five half days of work, and was late another ten days. Plaintiff cannot recall why she was absent and/or late on those days. Sider communicated to plaintiff about her poor attendance and repeat tardiness, but defendant claims plaintiff's attendance problems persisted. In addition, Terry Stocks ("Stocks"), the Shop Foreman, told plaintiff that her arrival time "was interfering with his job, that he couldn't get his job completed." After May 2005, Stocks complained to plaintiff when she would spend time in the front office assisting Ware because it "was interfering with him being able to complete his job." In August 2005, Stocks became upset with plaintiff for missing work. Stocks told plaintiff he could not input work orders into the system when she was absent, nothing was getting done when she was gone, and it was "hurting him."

Based on plaintiff's absenteeism and tardiness, Knotek decided to terminate plaintiff in August 2005. To avoid a disruption in business operations, however, Knotek decided to hire plaintiff's replacement and train her before terminating plaintiff's employment eventually on October 10, 2005. Knotek hired Ruthann Castro ("Castro") to replace plaintiff on September 10, 2005. At the time Castro was hired, she was 35-years-old.

Subsequently, on October 11, 2005, Knotek terminated plaintiff by letter. The letter stated that plaintiff's "employment with Jim Hawk Truck Trailers of Kansas City, Inc. has

3

been terminated as of October 10, 2005." Upon her termination, plaintiff received two weeks severance pay from her employer.

In plaintiff's Petition, she alleges age discrimination based upon the fact that she was replaced by 35-year-old Ruthann Castro. Plaintiff alleges discrimination based on sex because she believes she was treated differently than other similarly situated male employees who were allegedly not disciplined or terminated for excessive absenteeism. Plaintiff further alleges that she was retaliated against for calling the Department of Labor concerning timecard violations and for complaining about smoking in the workplace to her supervisors. Lastly, plaintiff claims that she was subjected to a hostile work environment because of numerous comments made about her chest size. In addition, plaintiff alleges there were other incidents involving male employees who made a drawing of a bra for plaintiff and created a device to hold plaintiff's breasts.

Defendant now seeks summary judgment on all of plaintiff's claims.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on

4

the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

## III.    DISCUSSION

Defendant seeks summary judgment on all on plaintiff's claims because (1) there is no employer-employee relationship between defendant and plaintiff, (2) defendant has articulated a legitimate non-discriminatory reason for terminating plaintiff, (3) the harassment plaintiff complains of is not severe enough, and (4) there is no evidence plaintiff was terminated because of reporting of unlawful conduct. The Court will consider these arguments below.

### A.    Whether an Employee-Employer Relationship Exists Between Plaintiff

5

**and Defendant**

Defendant argues this case should be dismissed on summary judgment because there is no employer-employee relationship between plaintiff and defendant since it never employed plaintiff. Defendant asserts that plaintiff never worked for defendant Jim Hawk Truck Trailer, Inc., which is incorporated in Iowa. Rather, plaintiff worked for Jim Hawk Truck Trailers of Kansas City, which is incorporated in Missouri. Defendant states that at most these two companies are sister corporations. However, even if plaintiff wants to argue that defendant is the parent corporation and Jim Hawk Truck Trailers of Kansas City is a subsidiary, defendant believes this argument would fail. Defendant asserts that in order to hold a parent corporation liable for its subsidiary's discrimination, "there must be evidence that the parent corporation exercised control over the 'individual employment decision involved,' namely the decision to terminate." Ivenson v. Ingersoll-Rand Co., 125 Fed. Appx. 73, 76 (8th Cir. 2004)(internal citations omitted). According to defendant, it had no control over the decision to terminate plaintiff. Defendant also notes that plaintiff filed a charge against her employer with the Equal Employment Opportunity Commission ("EEOC"), Jim Hawk Truck Trailers of Kansas City, but then failed to name her employer when she filed her complaint.

Additionally, defendant states plaintiff received her salary, benefits, unemployment benefits, and severance pay from Jim Hawk Truck Trailers of Kansas City. Further, defendant points out that the termination decision was made by Knotek and approved by Bottero and Sider, who are all employees of Jim Hawk Truck Trailers of Kansas City.

Finally, defendant argues it is entitled to summary judgment because plaintiff did not exhaust her administrative remedies against defendant since plaintiff's EEOC charge was

6

only against Jim Hawk Truck Trailers of Kansas City.

Plaintiff responds that defendant has confused this issue by giving its company different names. Plaintiff contends that defendant is misleading on its website because the website states "Jim Hawk Truck Trailers, Inc." and lists offices in Iowa, South Dakota, Missouri, Illinois, North Dakota, and Nebraska. Also, plaintiff states that the termination letter only lists Jim Hawk Truck Trailers, Inc. on its letterhead. Further, plaintiff notes that her pay stubs are from Jim Hawk Group rather than Jim Hawk Truck Trailers of Kansas City. Defendant admits the letterhead states Jim Hawk Truck Trailers, Inc. However, defendant notes that the letter specifically stated plaintiff's employment was terminated with Jim Hawk Truck Trailers of Kansas City, Inc.

Upon review of the parties' briefs, the Court finds that there is insufficient evidence to conclude whether defendant is the correct party in this action. It appears from plaintiff's state court petition that she stated the defendant in this case was Jim Hawk Truck Trailers of Kansas City, Inc. and that this defendant was a Missouri Corporation. When filing her petition, plaintiff had also listed the registered agent as Jim Knotek and the address of Jim Hawk Truck Trailers of Kansas City. Nowhere did plaintiff mention that she was suing the Iowa corporation. Plaintiff admits she worked for Jim Hawk Truck Trailers of Kansas City, Inc. and not for defendant. The Court concludes that there is confusion concerning the corporate structure of defendant and plaintiff's employer. Thus, based upon the evidence provided to the Court, it cannot determine whether defendant is the correct party in this matter.

Regardless of whether defendant is the correct party, however, the Court finds that plaintiff's discrimination claims fail. The Court will discuss each of plaintiff's claims below.

7

**B.**     **Age Discrimination Claim**

The Age Discrimination in Employment Act ("ADEA") makes it "unlawful for an employer....to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where there is no direct evidence of age discrimination, to establish a prima facie case of age discrimination, plaintiff must show (1) membership in the protected group; (2) plaintiff met job qualifications and legitimate expectations of the employer; (3) despite these qualifications, plaintiff suffered a discharge or other adverse employment action; and (4) plaintiff was replaced by a younger worker. Johnson v. Runyon, 137 F.3d 1081, 1082 (8th Cir. 1998); Montgomery v. John Deere & Co., 169 F.3d 556, 559 (8th Cir. 1999); Mathes v. Furniture Brands Int'l, Inc., 266 F.3d 884, 887 (8th Cir. 2001). If plaintiff makes out a prima facie case, then defendant must rebut it by articulating a legitimate, nondiscriminatory reason for its action. Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1332 (8th Cir. 1997). If defendant comes up with nondiscriminatory reasons for plaintiff's discharge, then the burden shifts to plaintiff to offer evidence showing that the reasons given by defendant were a pretext for discrimination. Id.

Plaintiff bases her age discrimination claim on the basis that a 35-year-old was hired to replace her position. Plaintiff also bases her claim on "[t]he fact that the two girls [employees] up in the front office were allowed to write in their time on their time cards and fill out their time cards at the end of the week and not on a daily basis. And were not required to use a time clock when I was required to use a time clock at all times." Plaintiff identifies these employees as Robin Ware ("Ware") and Jackie Englis ("Englis"). Ware was

8

43-years-old at the time of plaintiff's termination while Englis was 32-years-old. Under Jim Hawk Truck Trailers of Kansas City's policies, defendant states that the front office staff, including Bottero, Ware, and Englis were not required to use time clocks, but the other employees were required to use time clocks, including plaintiff.

The Court finds plaintiff's age discrimination fails as there is no evidence that age played a role in defendant's decision to terminate plaintiff. Plaintiff is member of the protected class as she was 46 at the time of termination, was fired from her position, and was replaced by a younger person after her dismissal. However, plaintiff fails to prove a prima facie case of age discrimination because she failed to demonstrate that she was adequately performing her job. Plaintiff does not dispute nor explain why she was absent for seventeen days in from January 2005 to August 2005.

Even if plaintiff established a prima facie case, defendant has rebutted it by providing nondiscriminatory reasons for plaintiff's dismissal. Defendant stated that it fired plaintiff because of her frequent absenteeism and excessive tardiness. Defendant also notes that the timekeeping requirements were imposed on all shop employees and plaintiff had notice of these requirements. Additionally, the Court notes that Bottero and Knotek, both age 61, participated in both the decision to hire plaintiff at age 41 and were also the ones to later fire plaintiff at age 46. See Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174-75 (8th Cir. 1992)("It is simply incredible...that the company officials who hired [plaintiff] at age fifty-one had suddenly developed an aversion to older people); accord Rothmeier, 85 F.3d at 1337 ("[W]hen hired by Rahan (who himself was age 50 at the time), [plaintiff] was already forty-three years of age; when fired by Rahan, plaintiff was forty-six. These facts run counter to any reasonable inference of discrimination based on age."). Plaintiff produced

no evidence that age played a factor in her termination. Therefore, the Court hereby **GRANTS** defendant summary judgment on plaintiff's age discrimination claim.

### C.    Gender Discrimination

Because plaintiff does not have direct evidence to support her claim of discrimination, the Court will analyze her gender discrimination claim under the McDonnell Douglas burden-shifting framework. <u>Wells v. SCI Mgmt., L.P.</u>, 469 F.3d 697, 700 (8th Cir. 2006)(relying on <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). To prove discrimination based on gender, plaintiff must establish (1) that she is within the protected class of people; (2) that she was qualified to perform her job or met her employer's legitimate expectations; (3) that she suffered an adverse employment action; (4) and has facts that give rise to an inference of sex discrimination. <u>See</u> <u>Holland v. Sam's Club</u>, 487 F.3d 641, 644-45 (8th Cir. 2007).

Plaintiff believes that she was discriminated against on the basis of sex by the following employees: Bottero (Office Manager), Knotek (General Manager), and Stocks (Shop Foreman). Plaintiff claims Stocks discriminated against her because he was "lenient with the mechanics on their times of coming in and working but was not with her." Plaintiff identifies these mechanics as Blaise Milligan, Tyson Milligan, and Lewis McLaughlin ("McLaughlin"). Plaintiff believes the attendance of these employees was ignored because "they were the high producers." Moreover, plaintiff alleges Stocks was very lenient with Chad Myers ("Myers"), a service technician.

Defendant counters these allegations by noting that Blaise Milligan and McLaughlin did not miss any days from work in either 2005 or 2006. Defendant states that Tyson

10

Milligan missed ten days of work in 2005 and six days in 2006. Myers was terminated on January 17, 2006 after missing twenty-eight days of work in thirteen months. Defendant also notes that it fired three other employees for absenteeism: Tim Switlik ("Switlik"), Mark Berndt, and John Knapp. Switlik was terminated on May 24, 2005 after missing thirty-three days of work in seventeen months. Knapp was terminated on December 31, 2003 after missing fifty days of work this year. Berndt was terminated from work after missing seventeen days of work in sixteen months.

Additionally, plaintiff alleges several instances of discrimination against Knotek. First, plaintiff believes Knotek discriminated against her because Doug Nordland remains employed by Jim Hawk Truck Trailers of Kansas City although he missed several days from work in 2004 for three months. Second, plaintiff believes Knotek treated single and divorced women with children differently than married females. Plaintiff bases her belief on an alleged statement made by Knotek after her termination. Knotek allegedly told "the shop people" that plaintiff's replacement was not to be treated like plaintiff because she was a "married Christian woman." However, plaintiff's knowledge of this statement is based on what another employee reported to her. Finally, plaintiff also claims that Knotek discriminated against her because he gave Myers and Switlik "a verbal warning, a written warning [and] three days off before they would get terminated."

Defendant admits that Switlik and Myers received written warnings prior to discharge. Defendant also admits that Knapp and Berndt received only verbal warnings before their discharges. However, defendant notes that none of these male employees were given severance pay like plaintiff. Next, defendant responds that Doug Nordland missed thirteen days in 2005 due to a heart condition and five and one-half days in 2006.

11

In addition, defendant claims that plaintiff received did receive counseling about her attendance and tardiness issues from Sider and Stocks. Defendant states that plaintiff met with Bottero in May or June 2005 to discuss the fact that Jim Hawk Truck Trailers of Kansas City needed to have a set time when plaintiff was going to be at work. Also, in late June 2005, Knotek discussed with plaintiff the need for her to have a set time for arriving at work.

Lastly, plaintiff believes she was discriminated against because Larry Wheat, who was hired in 2004 as the "front counter man" remains employed by Jim Hawk Truck Trailers although he missed more days than plaintiff and that he was taken from salary to hourly. Defendant responds, however, that Wheat missed eleven days in 2005 and thirty-seven days in 2005 because he was on short-term disability leave during that time. In contrast, defendant notes that plaintiff was not on disability leave when she was absent from work.

Based on these above allegations of sex discrimination, defendant argues plaintiff's sex discrimination claim should be dismissed because: (1) plaintiff cannot establish that she was meeting her employer's legitimate business expectations, (2) she has no evidence that similarly situated male employees were treated more favorably, and (3) defendant had a legitimate business reason to terminate plaintiff. The Court agrees with defendant. First, plaintiff was not meeting her employer's business expectations because she failed to show up to work on time on at least ten occasions and missed seventeen days of work. Thus, when plaintiff missed days from work and was late on several occasions, defendant had the discretion to terminate plaintiff based on excessive absenteeism.

Second, other than plaintiff's mere allegations and speculation about the way other male employees were treated, plaintiff provided zero evidence that other similarly situated

12

male employees were treated more favorably. Plaintiff did not depose these individuals nor request their attendance records from defendant. In fact, plaintiff conducted no amount of discovery in this matter. With such scant evidence, plaintiff cannot prove her case. Even if plaintiff had requested these attendance records, according to defendant, these records would show that four male employees and only one female employee was terminated for attendance problems. That female employee was plaintiff. The male employees who were not terminated for attendance problems did not have the same attendance issues as plaintiff. The only male employee who was not terminated for attendance issues was Wheat who missed thirty-seven days in 2005 because he was on short-term disability leave. Further, none of the male employees who were terminated for attendance problems received severance pay when they were terminated, whereas plaintiff did receive severance pay. Thus, there is no evidence that any similarly situated male employees were treated more favorably than plaintiff.

Finally, defendant articulated a legitimate, non-discriminatory reason for terminating plaintiff. Defendant provided a list of the days that plaintiff missed work on plaintiff's Check/Direct Deposit Register Summary (Doc. No. 25-9). From January 2005 to August 2005, plaintiff missed fifteen days of work, five half days of work, and was late another ten days for a total of seventeen missed days. Thus, there is no evidence that plaintiff's termination was based on gender.

Therefore, the Court hereby **GRANTS** defendant summary judgment on plaintiff's gender discrimination claim.

### D. Hostile Work Environment

13

To establish a prima facie case of sexual harassment, plaintiff must show (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition or privilege of employment; and (4) the employer knew or should have known of the harassment and failed to take prompt remedial action. See Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003). To affect a term, condition or privilege of employment, the harassment must be sufficiently severe or pervasive to create an objectively hostile work environment. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1047 (8th Cir. 2005). In order for harassment to be severe and "objectively hostile", the harassment/conduct must be more than merely offensive, immature or unprofessional; it must be extreme. Id. Conduct that does not exceed the threshold of severity is insufficient to create a prima facie case of sexual harassment. Id. The plaintiff must subjectively perceive the environment as abusive. Id. "More than a few isolating incidents are required," and the alleged harassment must be 'so intimidating, offensive, or hostile that it poisoned the work environment.'" Tuggle, 348 F.3d at 720 (quoting Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999)). The Court looks to a number of factors in determining whether a work environment is hostile or abusive, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993).

Upon consideration of plaintiff's allegations, the Court finds that the harassment alleged in this case did not create an actionable hostile work environment. In this case, the Court considered the following harassing incidents: (1) plaintiff was subjected to

smoking in the workplace; (2) plaintiff alleges Miller had a tendency to yell and scream at everybody and belittle them by calling them stupid; (3) comments made about plaintiff's chest size by a few male employees, including comments that plaintiff "had to keep them under control"; (4) a male employee created a device affixed to plaintiff's chair to support her breasts; (5) a drawing of a bra given to plaintiff so she can "keep those things under control; (6) about one to three times a day from January 2004 until plaintiff's termination, male employees would hit the lever on plaintiff's chair in order to see her breasts bounce off the top of the desk; and (7) Stocks made a comment about a woman's place in the home and stated plaintiff "wouldn't know a real man if [she] had one."[2] While such incidents are offensive, immature, and inappropriate, these incidents do not rise to the level of being sufficiently hostile to have poisoned the work environment. In Duncan v. General Motors Corp., 300 F.3d 928, 933-34 (8th Cir. 2002), the Court dismissed a hostile work environment claim where co-worker asked if plaintiff would have a relationship with him, touched plaintiff's hand on five occasions, requested that plaintiff draw sexually objectionable pictures and type documents with sexually offensive items, required that plaintiff use a computer which showed a naked woman on the screensaver, kept a penis-shaped pacifier in his desk, and put up a poster of plaintiff portraying her as the president of "Man Hater's Club of America." Despite this offensive behavior, the Court decided that plaintiff failed to "clear the highest threshold" of showing that the conduct was so severe or pervasive as to

---

[2] Although plaintiff states her daughter was around when she was subjected to harassment, the Court reviewed the affidavit of plaintiff's daughter and finds that this is not an eyewitness account of the harassment that took place (See Amanda Struck Affidavit, Doc. No. 38-4). Rather, Struck's affidavit is comprised of only hearsay statements based on what plaintiff told her, not based on what she actually saw.

15

alter a term, condition, or privilege of the plaintiff's employment.  See also  LeGrand v. Area Res. For Cmty. & Human Servs., 394 F.3d 1098, 1100-03 (8th Cir. 2005)(finding no objectively hostile work environment created by three unwelcome sexual advances in nine month period including asking employee to watch pornographic movies, hugging and kissing employee, and grabbing employee's buttocks); Tuggle, 348 F.3d at 722 (finding inappropriate sexual comments, taking photograph of plaintiff's buttocks and undesirable work assignments did not create hostile work environment). Further, plaintiff has provided no evidence to support her allegations of harassment as plaintiff did not conduct any discovery in this matter.

Additionally, an employer is not liable if it takes prompt remedial action which is reasonably calculated to end the harassment once the employer knew or should have known about the harassment.  See Carter v. Chrysler Corp., 173 F.3d 693, 702 (8th Cir. 1999)(internal citations omitted); Zirpel v. Toshiba America Info. Sys., Inc., 111 F.3d 80, 81 (8th Cir. 1997); Callanan v. Runyun, 75 F.3d 1293, 1296 (8th Cir. 1996).  Plaintiff produced no evidence that defendant knew or should have known of the alleged harassment and yet failed to take remedial action.  However, plaintiff provided no evidence that she ever showed the device or drawing to Knotek or that she reported these instances to Knotek or to her immediate supervisor.  Plaintiff made four complaints during her employment and none of them involved plaintiff's present allegations of discrimination.  Even when plaintiff tried to resign from Jim Hawk Truck Trailers of Kansas City, her resignation letter did not mention any discriminatory incidents.

Also, when plaintiff complained about smoking in the workplace, Miller announced to the mechanics that the service office was no longer to be used as a break room and

smoking would no longer be allowed. Additionally, Knotek issued memos to the employees instructing them not to smoke. Knotek even offered that plaintiff could work up front to get away from the smoking in the office where plaintiff worked.

Therefore, because plaintiff has produced no evidence in support of her harassment allegations and the allegations by itself do not create an actionable hostile work environment, the Court hereby **GRANTS** defendant's summary judgment on plaintiff's hostile work environment claim.

### E.    Retaliation Claim

"To establish a *prima facie* case of retaliation, [plaintiff] had to show that he 'participated in a protected activity,' that [his employer] 'took an adverse employment action against [him],' and that there was a causal relationship between the two." Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003), (quoting Calder v. TCI Cablevision of Missouri., Inc., 298 F.3d 723, 731 (8th Cir. 2002)). Additionally, Missouri recognizes a public policy exception to the employment at-will rule. Dake v. Tuell, 687 S.W.2d 191, 192-93 (Mo. 1985). The exception generally has been applied in cases involving employees fired for (1) declining to violate a statute, (2) reporting violations of the law by employers or fellow employees, or (3) asserting a legal right. Lay v. St. Louis Helicopter Airways, Inc., 869 S.W.2d 173, 176 (Mo. App. 1993); Boyle v. Vista Eyewear, Inc., 700 S.W.2d 859, 871-76 (Mo. App. 1985).

Plaintiff's retaliation claim is based on her alleged reporting of wrongful conduct to the Department of Labor ("DOL"). Plaintiff claims she received an instruction from Miller to change "actual punch card time on time cards." Plaintiff claims she emailed the

17

Department of Labor in May 2005 and claims the DOL told her that she should not change the time cards unless both the manager and the employee initialed the change. Plaintiff states she then gave the DOL's response email to Bottero "so she can handle it" and told Bottero she would no longer make changes to the time cards. Plaintiff further states the protected activity she reported was changing the mechanics' time cards. Thus, plaintiff believes her October 2005 termination was in retaliation for her May 2005 complaint to the DOL.

Defendant responds that the instruction plaintiff received was to change the start time for mechanics to the time they were scheduled to start versus the time they arrived. According to defendant, the reason for this is that some mechanics would arrive thirty minutes before start time and punch in, but not work during that time period. Because the mechanics never worked prior to the their start time, defendant states they were not paid for early arrivals.

The Court finds that plaintiff's retaliation claim fails because plaintiff has failed to show a causal relationship between the reporting of any unlawful conduct to the DOL and her termination. Plaintiff did not present any evidence in support of her retaliation claim, such as the e-mail she sent to the DOL or the response that the DOL sent plaintiff. Plaintiff also did not provide any evidence other than her mere statement that she provided the DOL response to Bottero. Moreover, plaintiff allegedly reported the time card violations to the DOL in May 2005, but plaintiff was not terminated until October 2005. Thus, at least six months passed between the DOL complaint and plaintiff's termination. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v.

18

Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999); See also Horrocks v. Mechancial Breakdown Protection, Inc., 32 Fed. Appx. 159, 2002 WL 362938, at 1 (8th Cir. 2002)(unpublished)(concluding uncontroverted evidence of employee's accumulation of absences and frequent instances of insubordination during three month time period between which employee engaged in protected activity and her termination did not establish causal connection). Therefore, plaintiff did not present any evidence to generate a question of fact connecting her protected activity to defendant's adverse employment action.

In addition, plaintiff failed to point to any statute, regulation, or constitutional provision that defendant violated by directing plaintiff to change time cards without the employee's approval. See Porter v. Reardon Mach. Co., 962 S.W.2d 932, 938-39 (Mo. App. 1998)(dismissing whistleblowing claim where plaintiff failed to plead or show that any conduct by employer violated a provision, statute, regulation, or violated a clear mandate of public policy).

Further, plaintiff presented no evidence to discredit the reason for termination proffered by defendant. Defendant stated that the reason for plaintiff's termination was excessive absenteeism. Defendant provided evidence that plaintiff was frequently absent from work and was late at least ten days in 2005. Other than mere assertions that plaintiff was terminated for contacting the DOL, there is no evidence to discredit defendant's reason for terminating plaintiff. See Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 717 (8th Cir. 2000)(finding plaintiff presented no evidence to discredit factual allegation proffered by defendant to support its reason for adverse action).

Therefore, the Court hereby **GRANTS** defendant's summary judgment on plaintiff's

retaliation claim.

**F.    Scheduling Order Violations**

The Court finds upon review of the record that plaintiff's counsel has failed to file a designation of the discriminatory incidents per the Court's Second Amended Scheduling and Trial Order (Doc. No. 34).  Paragraph 8 of the Court's Scheduling Order states as follows:

> If the case involves a claim of **DISCRIMINATION OR DISPARATE TREATMENT** under 42 U.S.C. § 2000(e) et seq. (Title VII), 29 U.S.C. § 621 et seq., or under 42 U.S.C. §§ 1981, 1983 or 1985 for discrimination in connection with employment or Chapter 213 RSMo. 1986 (Missouri Human Rights Act) or any other Federal or State law, the party making such claim shall, not later than June 15, 2007, serve and file a designation of each incident which may be offered at trial to show either the discriminatory treatment for which the claim is made, or the discriminatory animus of those against whom the claim is made.   Such designation shall include: (a) a brief description of the incident or happening; (b) the date and place thereof; and (c), the identity of the persons involved.   The defendant(s) shall state all affirmative defenses to each incidence alleged by plaintiff on or before July 2, 2007.

The record reveals that plaintiff's counsel has failed to file the designation of discriminatory incidents by June 15, 2007 in accordance with the Scheduling Order.   It appears that plaintiff never requested an extension of time in which to file her designation with the Court.  The only extension of time plaintiff ever sought with regard to discovery was to extend the close of discovery, which was filed on July 31, 2007 (Doc. No. 16).  The Court denied plaintiff's request on August 30, 2007 (Doc. No. 21).  Therefore, because plaintiff failed to file her designation of discriminatory incidents per the Court's Scheduling Order, plaintiff is unable to offer her alleged instances of discrimination at trial.

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons, Defendant's Motion for Summary Judgment

(Doc. No. 25) is **GRANTED**.

**IT IS SO ORDERED**.

Date:   3/20/08          **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri          Fernando J. Gaitan, Jr.
                               Chief United States District Judge

21